IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BARBARA MOHON,

    Plaintiff,

v.                                                                    No. 1:19-cv-652 KWR/JHR

NATIONAL CONGRESS OF EMPLOYERS INC.,
HEALTH INSURANCE INNOVATIONS INC.
and Jane Does 1-10,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Health Insurance Innovations Inc.'s (HII) Motion to Dismiss Plaintiff's claims, filed July 31, 2019 **(Doc. 7).** Having reviewed the parties' pleadings and the applicable law, the Court finds the Motion is not well-taken and, therefore is **DENIED,** with the exception of Plaintiff's cause of action for nuisance, which Plaintiff waives of her own volition, and is therefore dismissed.

### BACKGROUND and PROCEDURAL HISTORY[1]

Plaintiff filed her complaint in the First Judicial District in the State of New Mexico on June 8, 2018. Defendant HII timely filed its Notice of Removal with this Court based on federal question jurisdiction, pursuant to 28 U.S.C. §§ 1331, 1441(a) and 1446.

Plaintiff alleges that her cell phone is registered on the National Do Not Call Registry and that Defendants repeatedly made unwanted automated calls, or robocalls, with prerecorded

---

1 The facts contained in this section come from Plaintiff's Complaint (Doc. 1-1 Ex. A). *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990) (when considering motion to dismiss for failure to state claim upon which relief can be granted, Court must accept all well-pleaded allegations as true and must view them in light most favorable to Plaintiff); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

messages using an automatic telephone dialing system ("ATDS") to her phone number.

Plaintiff claims that HII operates as a "middle-man" between insurance agents and telemarketing call centers, on the one hand, and entities marketing various products, in this instance, Defendant National Congress of Employers Inc. (NCE), on the other. Plaintiff alleges that NCE authorized HII to work with currently unknown telemarketers and insurance agents to sell NCE's health insurance plans which it deceptively implies are "comprehensive or major medical insurance." The complaint states that once an individual indicates an interest in a product, she is transferred to unknown individuals who act as "closers" collecting caller information to secure "enrollment" in that product.

Whenever Plaintiff spoke with "live" telemarketers, the telemarketers would only refer to a standardized, scripted sales pitch designed for mass marketing and would refuse to accurately identify themselves or their sponsors unless Plaintiff would agree to purchase the offered product. If Plaintiff complained about the calls or asked for identifying information regarding either the telemarketer or the sellers/sponsors, the telemarketers would hang up. Plaintiff avers that ATDS and robocalls were used, because when she answered the phone, she would usually hear a prerecorded message or artificial voice, and if she did not answer, a voicemail was left with the same pre-recorded messages.

Plaintiff claims the auto-recordings included an opt-out feature, but when she dialed the requisite key to halt calls, this did not work. Plaintiff asserts she also spoke with live telemarketers to inform them that she did not wish to be called further, to no avail. The complaint states that Defendants had the authority over and control of the impermissible telemarketing practices they or their agents engaged in and that Defendants and their agents did not have or did not adhere to

internal Do Not Call policies to prevent calls to those on the National Do Not Call Registry.

On June 4, 2019, allegedly for the sole purpose of identifying the perpetrators behind the harassing calls, Plaintiff answered a phone call and affirmatively indicated interest in enrolling in the offered product; a health insurance program.[2] Once Plaintiff was "enrolled," she was provided information identifying HII and NCE as the sponsors of the calls, including access to HII's web portal "mybk.com," and "My Benefits Keeper" customer and billing systems. Plaintiff received the "Health Choice +" package which included membership to NCE as well as several added "benefits" and discounts to other programs. After enrolling, Plaintiff received welcome emails and additional forms and instructions.[3] Plaintiff states that all relevant times her number was listed on the National Do Not Call Registry; that she never consented in writing to being called by Defendants; and that she received numerous, repeated, harassing calls in the twelve months prior to commencing this action.[4]

Plaintiff asserts that the repeated calls from Defendants violated the Telephone Consumer Protection Act ("TCPA") Subsections (b) and (c); the New Mexico Unfair Trade Practices Act ("NMUPA") NMSA Section 57-12-22(A), (B1), and (C)(1); and 16 C.F.R. § 310.4 (the Telemarketing Sales Rule or "TSR" ). Plaintiff additionally submits state law claims for nuisance, trespass to chattels, and civil conspiracy. Plaintiff seeks to hold Defendant Jane Does directly liable for initiating the calls and Defendants HII and NCE vicariously liable for, *inter alia*,

---

2 Plaintiff alleges these "health insurance" programs were deceptive in that they did not actually provide appropriate coverage and were designed to "rip-off" customers.
3 Plaintiff attached exhibits including, among other things, a My Benefits Keeper welcome letter and explanation of benefit with payment instructions, as well as an NCE membership application. See Doc. 1-1 Ex. A pp. 20-32).
4 See Doc. 1-1 Ex A p.28. The E Terms and Conditions, which Plaintiff signed on June 4, 2019 include that the applicant authorizes My Benefits Keeper and affiliated "agents and independent contractors" to contact applicant via automated or pre-recorded calls.

authorized the calls, controlling or directing the callers; and granting the telemarketers access to Defendants' internal information and operating systems for the purpose of selling their products. Defendant HII now moves for dismissal under Rule 12(b)(6) for failure to state a claim.

## LEGAL STANDARD

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss, the complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556); see also *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could prove some

4

set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). The degree of specificity "depends on context". *Id*. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Plaintiff has not challenged removal of this matter, which appears to meet the requirements of removal pursuant to federal question jurisdiction. 28 U.S.C. §§ 1331, 1441(a).

Defendant HII seek to dismiss the complaint for failure to state a claim. First HII argues that it has not received fair notice of the claims pursuant to the Federal Rules of Civil Procedure (FRCP) Rule 8, because the complaint does not separately identify factual allegations as to each defendant or each set of claims for relief. HII claims this leaves Defendants to guess as to which actions each Defendant specifically took that Plaintiff alleges constitutes a violation. HII next argues that Plaintiff has not proffered supporting facts demonstrating apparent vicarious liability claims against it for the telephone calls made by the Jane Doe defendants, and that Plaintiff has instead impermissibly drawn legal conclusions, merely "reciting the elements of an agency relationship among the various defendants." Thirdly, HII notes that Plaintiff's "Third Set of Claims" contain unconnected common law theories of liability without supporting facts.

In the alternative, HII refers to the attachments included in Plaintiff's complaint relevant

to her enrollment in the insurance program, arguing that once she enrolled, she effectively consented to the calls. Lastly, HII asserts that Plaintiff has not alleged that she actually paid anything for the insurance program, and thus Plaintiff lacks standing as a "buyer" under the NMUPA to allege deceptive practices related to the marketed product.

**FRCP Rule 8**

Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). While the Court notes that Plaintiff's complaint could have been more cogently structured,[5] "the stringent requirement to specifically name which defendant did what to the plaintiff is a standard that tends to apply to complex claims, such as civil rights actions." *Dendy v. Chartrand*, 2019 WL 719762, at *2 (D.N.M. Feb. 20, 2019); *See Collins*, 656 F.3d at 1215 (explaining that the "Twombly standard may have greater bite in the context of a § 1983 claim against individual government actors, because they typically include complex claims against multiple defendants[,]" and that it is "important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." (citations and internal quotation marks omitted)). The instant case does not have complex claims.

---

5 The Court also rejects Defendant's position that the complaint be dismissed because Plaintiff organized her common law claims within one section titled "Third Set of Claims for Relief – Common Law Claims." Defendant relies upon *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll*., 77 F.3d 364, 366 (11th Cir. 1996) (holding "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief. Under the Federal Rules of Civil Procedure, a defendant faced with a complaint such as Anderson's is not expected to frame a responsive pleading. Rather, the defendant is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement). Here, the complaint is discernable.

Rather, this Court must conduct a plausibility analysis by examining the elements of the claims asserted in the complaint. *Chartrand*, 2019 WL 719762, at *2 (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1191-92 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.")).

**Plaintiff plausibly alleges a claim under the TCPA**

The TCPA authorizes private rights of action for statutory and regulatory violations. When alleging a violation under TCPA § 227(b)(1)(A)(iii) violation, a plaintiff must show that: (i) a defendant made a telephone call; (ii) to his or her telephone; (iii) using "any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227; *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1225 (D.N.M. 2019) (referencing *Dendy v. Chartrand*, 2019 WL 719762, at *2 (listing three elements: "(1) to make any call; (2) using any ATDS or an artificial or prerecorded voice; and (3) to any telephone number assigned to a paging service, cellular telephone service ... or any service for which the called party is charged for the call")).

In *Chartrand*, the Plaintiff alleged she received calls from phone numbers associated with Defendants, although it was unclear whether Defendants themselves initiated the calls or whether the calls were made by others at their behest. *Chartrand*, 2019 WL 719762, at *2. Plaintiff claimed that the calls were made by ATDS and that they contained prerecorded messages. *Id*. at *3. Making the logical assumption that Plaintiff, who received these calls on her cellphone, was charged for these calls, the Court held that Plaintiff had sufficiently established the elements of a violation under the TCPA. *Id*. The Court also noted the difficulty in concretely advancing these claims in detail without further discovery. *Id*.

7

Here, the Court similarly finds that Plaintiff has demonstrated a plausible claim of TCPA violations. Plaintiff alleged that she received numerous, unwanted robocalls from ATDS; that the calls were placed by Jane Does on behalf of Defendants HII and NCE; and that Defendants exerted control over the calls. As in *Chartrand*, the Court makes the logical inference that Plaintiff was charged for calls, thereby satisfying the final element under the statute. 47 U.S.C. § 227(b)(1)(A)(iii); See *Chartrand*, 2019 WL 719762, at *3. Further, relevant details can be ascertained through discovery.

Plaintiff additionally seeks $1500 per call, pursuant to TCPA Subsection C. 47 U.S.C. § 227 (C). Subsection C permits recovery when a Defendant knowingly or willfully violated the statute. *Id*.; See *Chartrand*, 2019 WL 719762, at *3 (citing *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011) (the TCPA also provides a separate cause of action that "a person may recover statutory damages of $1500 for a willful or knowing violation of the automated-call requirements, § 227(b)(3), and $1500 for a willful or knowing violation of the do-not-call-list requirements, § 227(c)(5)—even if both violations occurred in the same telephone call.")). Plaintiff has alleged that Defendants knowingly and willfully violated these provisions, which the Court finds sufficient at this early stage. *See Id*. at *3 ("*See* Fed.R.Civ.P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *see also Hashw v. Dep't Stores Nat. Bank*, 986 F. Supp. 2d 1058, 1062 (D. Minn. 2013) (finding that at early stage of TCPA litigation plaintiff can allege willfulness generally").

**The Relevant Law Regarding NMUPA**

Plaintiff asserts violations of NMUPA Subsections A, B(1), and C(1). The NMUPA states in the relevant portion that "A person shall not utilize an automated telephone dialing or push-

button or tone-activated address signaling system with a prerecorded message to solicit persons to purchase goods or services unless there is an established business relationship between the persons and the person being called consents to hear the prerecorded message." NMSA 1978 § 57-12-22. The NMUPA further makes it unlawful to "make a telephone solicitation for a purchase of goods or services:"

> (1) without disclosing within fifteen seconds of the time the person being called answers the name of the sponsor and the primary purpose of the contact; … [and]
>
> (2) make a telephone solicitation of a residential subscriber whose telephone number has been on the national do-not-call registry, established by the federal trade commission, for at least three months prior to the date the call is made

NMSA 1978 § 57-12-22 (B)(1), (C)(1).

There is no apposite New Mexico jurisprudence interpreting these provisions.

However, the Court in *Chartrand* has explained

> "Without any guidance from New Mexico case law to interpret Sections 57-12-22(A) and (C), the Court uses the previous persuasive jurisprudence, as allowed under New Mexico law, and does not restate it herein. NMSA 1978, § 57-12-4 ("It is the intent of the legislature that in construing [...] the Unfair Practices Act the courts to the extent possible will be guided by the interpretations given by the federal trade commission and the federal courts.")"

*See also Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1232 (D.N.M. 2019) (adopting the *Chartrand* position).

Plaintiff has alleged that she received ATDS calls with prerecorded messages offering health insurance plans; that she did not consent to these calls; that Defendants refused to identify themselves or their sponsor/seller; that she had no prior relationship with Defendants; and that she has, at all relevant times, been registered on the National Do Not Call Registry, yet continued to receive calls from Defendants. The Court deems these allegations sufficiently indicative of

9

violations of NMUPA Sections A, (B)(1), and (C)(1).

The Court finds Defendant's argument unconvincing that Plaintiff lacks standing to assert a claim under the NMUPA because she did not purchase a product[6] or that, in the alternative, she consented to receive these calls when she enrolled in the program on June 4, 2019. Plaintiff's complaint does state that she "enrolled" in and "purchased" Defendants' "deceptive" health insurance program. Moreover, Plaintiff's e-signing of the consent to receive calls following her enrollment fails to address the subject of the complaint, to wit, the numerous calls *prior* to that date.[7] *Complaint ¶¶* 41-47.

### **Vicarious Liability and Civil Conspiracy**

HII argues that Plaintiff has failed to demonstrate an agency relationship between HII and Jane Doe callers beyond speculative allegations in a conclusory manner. Defendant also posits that it is impossible that Plaintiff could know with any certainty that the majority of the calls complained of, including the ones she received but did not answer, were related to HII products, given the prevalence of telemarketing calls.

Adopting the agency and vicarious liability analysis discussed in *Chartrand*, the Court disagrees with Defendant's argument that Plaintiff has not alleged plausible facts to demonstrate an agency connection between the Jane Doe callers and Defendants.

In *Chartrand*, the Court explained:

"The Federal Communications Commission has ruled that, under federal common-

---

6 Defendant's reliance upon *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc* (2005-NMCA-051, ¶ 17, 137 N.M. 524, 529–30, 113 P.3d 347) is misplaced. That case "determined that a seller of custom windows could not assert a claim against a buyer who agreed to purchase windows. ("Consistent with its purpose as consumer protection legislation, the UPA gives standing only to buyers of goods and services.")" *Gandydancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶ 30, 453 P.3d 434, 443. The facts of that case are distinguishable from the matter at hand. Moreover, Plaintiff has alleged she did "purchase" and "enroll" in Defendant's product.
7 This applies equally to Defendant's argument regarding consent under the TCPA claims.

> law principles of agency, there is vicarious liability for TCPA violations." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016) (citing *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013)). The FCC has clarified that vicarious liability is imposed "under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. at 6574. This includes "a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.* at 6584. "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* at 6583. "[W]hile a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of [ ] section 227(b) ... that are committed by third-party telemarketers." *See id.* at 6574.

*Dendy v. Chartrand*, 2019 WL 719762, at *5.

Similarly, New Mexico Law recognizes vicarious liability and agency theory. *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1236 (D.N.M. 2019) ("[a]uthority is the power of the agent to affect the legal relations," including liability "of the principal by acts done in accordance with the principal's manifestations of consent to [the agent]." Romero v. Mervyn's, 1989-NMSC-081, ¶ 11, 109 N.M. 249, 784 P.2d 992, 996 (quoting Restatement (Second) of Agency § 7 (1958))).

Plaintiff has sufficiently alleged potential vicarious liability, claiming, among other things, that Defendants authorized, directed and initiated Jane Doe callers to use ATDS to contact Plaintiff with robocalls and prerecorded messages, marketing their product. *See Hossfeld v. Geico*, 88 F.Supp. 3d 504, 510-511 (D. Md. 2015) (citing *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574) ("while a seller does not generally "initiate" calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c)

that are committed by third-party telemarketers").

**Civil Conspiracy**

A civil conspiracy is a "combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Seeds v. Lucero*, 2005-NMCA-067, ¶ 12, 137 N.M. 589 (citation and internal quotation marks omitted). "The purpose of a civil conspiracy claim is to impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members." *Ettenson v. Burke,* 2001-NMCA-003, ¶ 12, 130 N.M. 67. A civil conspiracy claim is not actionable "unless a civil action in damages would lie against one of the conspirators, if the act was done by him alone...." *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1240 (D.N.M. 2019) (quoting *Armijo v. Nat'l Sur. Corp*., 1954-NMSC-024, ¶ 30, 58 N.M. 166, 268 P.2d 339, 347).

"The existence of the conspiracy must be pled either by direct allegations or by allegation of circumstances from which a conclusion of the existence of a conspiracy may be reasonably inferred." *Las Luminarias of the New Mexico Council of the Blind v. Isengard*, 1978-NMCA-117, ¶ 5, 92 N.M. 297, 300, 587 P.2d 444, 447.

Plaintiff has pled sufficient facts to assert a claim for civil conspiracy. Plaintiff has alleged a combination of two or more persons, here HII and NCE, worked together with or directed and controlled Jane Does to utilize ATDS with prerecorded messages to contact Plaintiff despite her being on the National Do Not Call Registry. *See Dendy v. Chartrand*, 2019 WL 719762, at *5 (finding Plaintiff stated a plausible claim and acknowledging the difficulty of alleging "all the facts necessary with specificity" absent the opportunity for discovery). Plaintiff also alleged that the telemarketers have access to HII's exclusive information and the ability to enroll individuals into

insurance programs, and that once enrolled, she received information indicating the calls had been made on behalf of HII and NCE. *See Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189 at 1246–47.

**Trespass to Chattels**

"Trespass to chattels "is the intentional use or interference with a chattel which is in the possession of another, without justification." *Tex.-N.M. Pipeline Co. v. Allstate Constr., Inc.*, 1962-NMSC-026, ¶¶ 3-7, 70 N.M. 15, 369 P.2d at 402-03. The tort requires an intention to act "for the purpose of interfering with the chattel or with knowledge that a disturbance thereof is substantially certain to occur." Tex.-N.M. Pipeline Co. v. Allstate Const., Inc., 1962-NMSC-026, ¶¶ 3-7, 70 N.M. 15, 369 P.2d at 402-03." *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1238 (D.N.M. 2019).

In *Agentra LLC*, the Court noted that New Mexico has yet to address the applicability of this tort to unwanted ATDS calls. While noting that various courts have split in making this determination, the Court stated that it "predicts that the Supreme Court of New Mexico would adopt the approach permitting more liberal recovery and recognize a trespass-to-chattels claim on allegations that a plaintiff received unwanted electronic communications. See *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d at 1224-25." This Court agrees with the analysis in *Agentra LLC* and rejects HII's motion to dismiss this claim.

**Nuisance**

As previously noted by the Court, Plaintiff has expressly waived her nuisance claim.[8] Accordingly, the Court dismisses this claim without reaching the merits.

---

8 Doc. 11 p.8 fn 7 "Plaintiff is persuaded by Judge Browning's analysis of the nuisance claim in his Memorandum Opinion and Order, Doc. 40 filed on 6/24/19, in *Mohon v. Agentra LLC et al*, case no. cv-18-915 in this District. Plaintiff will abandon the common-law nuisance claim stated in her Complaint."

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant HII's Motion to Dismiss Plaintiff's claims **(Doc. 7)** is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's claim for nuisance case is **DISMISSED.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE