IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

BARBARA MOHON,

    Plaintiff,

vs.                                                                                                                                           No. 19-cv-00652 KWR-JHR

NATIONAL CONGRESS OF EMPLOYERS
INC. and MARLON MILLS,

    Defendants.

## MOTION FOR DEFAULT JUDGMENT

TO THE HONORABLE COURT:

    Plaintiff has not sought concurrence of Defendants for the relief sought by this motion because of the nature of the relief sought, and because the Clerk of this Court has entered their defaults.

    The Clerk of Court has entered the default of Defendant National Congress of Employers Inc. ("NCE"): Doc. 5 filed on 7/22/19. The Court is requested to take judicial notice from the its file in the above-entitled and numbered cause that NCE has received all the process it is due and Doc. 5 is proper.

Undersigned served the items the subject of Doc. 57 (filed on 11/4/20) as additional means of drawing NCE's attention to this case, to see if it intended to participate.  NCE has not responded or participated at all.

The Clerk of Court has entered the default of Defendant Marlon Mills ("Mills"): Doc. 56 filed on 11/4/20.  The Court is requested to take judicial notice from the its file in the above-entitled and numbered cause that Mills has received all the process he is due and Doc. 56 is proper.

Because NCE and Mills (collectively "Defendants") have defaulted, the averments of Plaintiff's Complaints (Doc. 1-1 filed on 7/17/19, and Doc. 41 filed on 7/10/20) should be taken as true and should be deemed admitted by Defendants. *Gallegos v. Franklin*, 1976-NMCA-019.  Default judgment is available when the process has been halted because of an essentially unresponsive party, in which instance the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.  *Id*.  The possibility of default must be a deterrent to those who choose delay as their litigation strategy.  *Id*.

Plaintiff requests Default Judgment against Defendants on her claims for statutory damages pursuant to the Telephone Consumer Protection Act ("the TCPA") and the New Mexico Unfair Practices Act ("the UPA").   Plaintiff will

2

waive the balance of her claims against Defendants at this time for purposes of default judgment.[1]

For evidence in support of this motion, Plaintiff incorporates herein by reference her Declaration, **Doc. 10-1 filed on 8/5/19**, which establishes that she was harassed by "over" twenty (20) robocalls using pre-recorded messages, each in excess of 15 seconds long.[2]

A "soldiers and sailors" Declaration as to Mills is Exhibit 1 filed herewith in support of this motion.

As set forth in more detail below, the evidence supports judgment against Defendants jointly and severally for, at minimum, **60** violations of the TCPA and **60** violations of the UPA.  Default judgment should be entered for $1500 for each of 60 TCPA violations plus $300 more for each of the 60 UPA violations, totaling **$108,000.00**.

Only two (2) allegations are necessary to state the basic **Subsection B** TCPA claim:  telemarketer called her phone, and telemarketer did so using a pre-recorded message **or** an automatic telephone dialing system.  *Mohon v. Agentra LLC*, 400

---

[1]    The Court might note that the statutory damages provided for by the UPA are "in ***addition*** to remedies otherwise available against the same conduct".  NMSA §57-12-10(D).

[2]    See paragraphs 41-50 of her original Complaint describing the calls, and paragraphs 42-51 of Doc. 41 filed on 7/10/20 describing the calls.

F.Supp.3d 1189, 1225 (D. NM 2019); *Hossfeld v. GEICO*, 88 F.Supp. 3d 504 (D.Md. 2015).  Plaintiff's Complaints also amply give notice of multiple "do not call" or **Subsection C** violations because Plaintiff's Complaints state her phone number is listed on the National Do Not Call Registry (see 47 C.F.R. §64.1200(c)(2)) and her Declaration (Doc. 10-1 filed on 8/5/19) states all the calls were made within a 12-month period.

Plaintiff's Complaints also give notice of three (3) separate UPA violations within each call because the Complaints allege   1)  calls that were not only automated but in addition used pre-recorded messages, thus violating §57-12-22(A); 2)  violations of §57-12-22(B) because the callers failed and refused to identify themselves during the calls as required by law;  AND  3) violations of §57-12-22(C) because Plaintiff's phone number has been registered on the National Do Not Call Registry for quite a long time.

Actions to remedy invasions of privacy and intrusion upon seclusion have long been heard by American courts and the right of privacy is recognized by most states. *Van Patten v. Vertical Fitness*, 847 F.3d 1037, 1043 (9th Cir. 2017).  When Congress enacted the TCPA Congress made specific findings that "unrestricted telemarketing can be an intrusive invasion of privacy". *Id*.;  *Mims v. Arrow Fin. Servs., LLC* , 565 U.S. 368, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012).  By the

4

TCPA Congress "identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm". *Van Patten*, 847 F.3d 1037 at 1043. A plaintiff alleging a violation of the TCPA "need not allege any additional harm beyond the one Congress has identified." *Id.* (and citing *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 672, 193 L.Ed.2d 571 (2016)). See also for example the Article III analysis in *LaVigne v. First Cmty. Bancshares,* 215 F. Supp. 3d 1138, 1145 (D.NM 2016).

Cell phones are "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude that they were an important feature of human anatomy." *Riley v. California,* 573 U.S. 373, 385 (2014). The constant proximity of cell phones means that unwanted calls interrupt every aspect of life. Strong enforcement of the law is needed now more than ever.

Widespread adoption of cell phones has exacerbated the harmful effects of robocalls. At the end of 2018, 57.1% of American households were wireless-only: 3.2% more than the previous year.[3] Nearly all Americans (96%) own a cell phone, and those of 81% of Americans are smart-phones.[4] As the Court noted in *Riley*, "it

---

[3] Stephen J. Blumberg & Julian V. Luke, *Wireless Substitution: Early Release of Estimates From the National Health Interview Survey, July-December 2018* 1, National Center for Health Statistics (Jun. 2019) (https://www.cdc.gov/nchs/data/nhis/earlyrelease/wire- less201906.pdf).

[4] Pew Research Center, *Mobile Fact Sheet* (June 12, 2019) (https://www.pewinternet.org/fact-

5

is the person who is not carrying a cell phone . . . who is the exception." 573 U.S. at 395.  Americans use their phones for many everyday tasks, which robocalls routinely interrupt.  Mobile applications, or "apps," offer "a range of tools for managing . . . . . all aspects of a person's life." *Riley*, 573 U.S. at 396.  Mobile app stores offer millions of different apps for work, communication, health, entertainment - for nearly any imaginable task  "there's an app for that." *Id.*

Robocalls are so pervasive that Americans now often ignore calls from unknown numbers - leading to economic and even medical harms.  In one survey, Consumer Reports found that 70 percent of Americans do not answer calls from unrecognized numbers.  Consumer Reports, *What Have You Done in Response to Robocalls?* (Dec. 2018).[5]  Senator Schatz noted that "robocalls have turned us into a nation of call screeners" and emphasized that this could become a "significant economic issue." *Illegal Robocalls: Calling all to Stop the Scourge: Hearing before the S. Comm. on Com., Sci., and Transp.*, 116th Cong. (Apr. 11, 2019).[6]  One hospital reported persistent inability to reach patients because of call screening.  Tim

---

sheet/mobile/)

[5]    https://www.consumerreports.org/robocalls/mad-about-robocalls/

[6]    https://www.commerce.senate.gov/public/index.cfm/hearings?ID=5A66BB4E-777B-4346-AA5F-CAB536C54862

Harper, *Why Robocalls Are Even Worse Than You Thought*, Consumer Reps. (May 15, 2019).[7]

The trend of ignoring calls from unknown numbers has also recently exacerbated the public health crisis as coronavirus contact tracers struggle to reach people across the country. *See* Benjamin Siegel, Dr. Mark Abdelmalek, & Jay Bhatt, *Coronavirus Contact Tracers' Nemesis: People Who Don't Answer Their Phones*, ABC News (May 15, 2020);[8] Stephen Simpson, *Few Picking Up Phone in Arkansas When Virus Tracers Call*, Ark. Democrat Gazette (July 10, 2020).[9] Robocalls undermine trust that calls are legitimate, thus causing not only economic harm but harm to the public health.

Federal agencies receive a "staggering number of complaints about robocalls." *Barr v. Am. Ass'n of Political Consultants, Inc.,* 140 S. Ct. 2335, 2343 (2020). The FCC ranks automated calls as a "perennial top consumer complaint." FCC, *Report on Robocalls* 2 (2019).[10] Complaints to the FCC about robocalls

---

[7] https://www.consumerreports.org/robocalls/why-robocalls-are-even-worse-than-you-thought/

[8] https://abcnews.go.com/Health/coronavirus-contact-tracers-nemeses-people-answer-phones/story?id=70693586

[9] https://www.arkansasonline.com/news/2020/jul/10/few-picking-up-phone-when-virus-tracers-call/

[10] https://docs.fcc.gov/public/attachments/DOC- 356196A1.pdf

spiked from 150,000 in 2016 to 232,000 in 2018 - a 50% increase in just two years. *Id.* at 4. Meanwhile, consumers submitted nearly 3.8 million robocall complaints to the FTC in the first nine months of 2019. FTC, *National Do Not Call Registry Data Book for Fiscal Year 2019* (Oct. 2019).[11] State attorneys general also "field a constant barrage of complaints." *Barr,* 140 S. Ct. at 2343. Strong enforcement of the law is needed now more than ever.

Statutory damages provided by the TCPA serve to liquidate uncertain actual damages and encourage victims to bring suit to redress violations. *Universal Underwriters v. Lou Fusz Auto.*, 300 F.Supp.2d 888, 893 (E.D. Mo., 2004). The TCPA is intended primarily to deter and redress wrongs to the public generally. *Hannabury v. Hilton Grand Vacations*, 174 F.Supp.3d 768, 775 (W.D. NY, 2016). The TCPA's damages provision is specifically designed to be disproportional to the harm suffered; such disproportion both deters the violative conduct and "encourage[s] victims to bring suit to redress violations." *Id. at 776 (citing Universal Underwriters Ins., supra).* Congress by the TCPA has sought to incentivize persons such as Plaintiff and her undersigned attorney to combat the type of behavior engaged in by Defendants as described in Plaintiff's Complaint: the

---

[11] https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2019/dnc_data_book_2019.pdf

"private attorney general concept".    Plaintiff's Complaint and her request herein for $108,000 against Defendants, is a public service.

How $108,000.00 is Calculated

Subsection **B** of the TCPA makes it illegal "to make any call . . . . . using an automatic telephone dialing system <u>or</u> an artificial or prerecorded voice . . . . . to any telephone number assigned to a . . . . . cellular telephone service". 47 U.S.C. § 227(b)(1)(A). Subsection B codifies a right of action to recover $500 for each violation of Subsection B **OR** the regulations prescribed under Subsection B. Subsection B statutory damages are awarded per "violation", not just per "call". See for example *Lary v. Trinity Physician Fin.*, 780 F.3d 1101, 1106 (11th Cir. 2015). The $500 civil penalty may be trebled by the Court to $1500 in its discretion for willful or knowing violations. 47 U.S.C. § 227(b)(3).

Plaintiff's Complaint and her supporting Declaration establish "over" 20 calls to her cell phone using an automatic telephone dialing system ("auto-dialer") **AND** an artificial or prerecorded voice. For 20 auto-dialer calls to Plaintiff, plus 20 uses of an artificial or prerecorded voice directed to Plaintiff's cell-phone, Plaintiff is presumptively entitled to an award of $20,000 for forty (40) Subsection B violations, which should be trebled by the Court to $60,000.

In contrast to Subsection B's express prohibitions on the use of auto-dialers and pre-recorded messages, Subsection **C** of the TCPA merely mandates that the Federal Communications Commission ("FCC") "shall" conduct rulemaking proceedings and "prescribe regulations to implement methods and procedures for protecting [subscriber] privacy rights". 47 U.S.C. § 227(c)(2).[12] §227(c)(5) codifies a separate right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" ("Subsection **C**" or **"do-not-call" violations**). Subsection C violations are the calls themselves. Therefore and also in contrast to Subsection B, Subsection C or "do-not-call" damages are awarded on a "per call" basis only. See *Charvat v. Gvn Michigan Inc.*, 561 F.3d 623 (6th Cir. 2009) explaining this distinction. Then see *Charvat v. Nmp Llc.*, 656 F.3d 440 (6th Cir. 2011) explaining that on top of the "do-not-call" or Subsection C damages awarded "per call", additional Subsection B damages are awarded for each Subsection B "violation" within each "call" that violated Subsection C.

To have Subsection C violations, the consumer's phone that was called must be listed on the National Do-Not-Call Registry ("the Registry"). Subsection C established the Registry and the violative conduct consists of telemarketing calls to

---

[12]     The most commonly-known result of Subsection C is the National Do Not Call Registry (see www.donotcall.gov)  jointly maintained and administered by the FCC and the FTC.

listed numbers.  See 47 C.F.R. § 64.1200(c).  Plaintiff's Complaints along with her Declaration establish  20 Subsection C or "do not call" TCPA violations consisting of 20 telemarketing calls to Plaintiff's phone number that has been listed on the Registry since 2009.  Plaintiff is presumptively entitled to an award of "up to" an additional $10,000 for the 20 Subsection C violations, which should be trebled by the Court to an additional $30,000.

Plaintiff is also entitled as a matter of law to stack on the statutory damages described above for 60 UPA violations, at $100 for each violation plus treble damages, for a total of $18,000 pursuant to the UPA.

Plaintiff's original Complaint at Doc. 1-1 amply pleads facts to support the Court's finding that NCE's conduct was knowing and willful.  Paragraph 60 alone is sufficient to support a finding of knowing or willful conduct because telemarketers are required by law to subscribe to and comply with the Registry.  *See* citations at paragraph 5 of Doc. 41 filed on 7/10/20.  In addition to paragraph 60, at paragraph 47 of Plaintiff's Complaint at Doc. 1-1 she states even her specific do-not-call requests were ignored.  See also paragraphs 11, 15, 17, 18, 22-23, 27, 31-35 and 68-70 of Plaintiff's Complaint at Doc. 1-1 for facts that will support an award of treble all damages against NCE.

For facts that will support a finding of knowing and/or willful behavior by MILLS, see these paragraphs of Doc. 41 filed on 7/10/20:   11, 16, 19-20, 26, 27, 33-35, 37-38, 47-48, 51, 53-55 and 62-68.

Post-judgment Interest

Interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).  "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a). Such interest is computed "daily" and compounded "annually". *Id*. For a determination of this interest rate see "Selected Interest Rates (Daily) - H/15," Bd. of Governors of the Fed. Reserve Sys. (Aug. 28, 2020), https://www.federalreserve.gov/releases/h15/.

Plaintiff's  proposed Default Judgment is Exhibit 2 filed with this motion.

WHEREFORE, Plaintiff requests entry of judgment against NCE and Mills, jointly and severally, for 60 violations of the TCPA and 60 violations of the UPA plus treble damages, totaling  **$108,000.00**  plus applicable post-judgment interest.

RESPECTFULLY SUBMITTED,

By: /s/ Sid Childress
_____
Sid Childress, Lawyer
1925 Aspen Dr. #600A
Santa Fe, NM 87505
(505) 433 - 9823
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I caused this document and all Exhibits to be served in accordance with D.N.M.LR-CIV. 5.1 by filing it through the Court's CM/ECF electronic filing system.

On receipt of a conformed copy from the Clerk of Court I will also mail a conformed copy and all exhibits to NCE c/o its registered agent National Registered Agents Inc. at 160 Greentree Dr #101, Dover, DE 19904.

On receipt of a conformed copy from the Clerk of Court I will also email a conformed copy of this document and all exhibits to:

millsteamplans@gmail.com, gpshealthgroup@gmail.com, paperplanes7895@gmail.com, patrickmaletto93@gmail.com and marlongmills@comcast.net.

/s/ Sid Childress
_____